1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CAROL MEYERS,

         Plaintiff,

   v.

KAISER FOUNDATION HEALTH PLAN INC,

         Defendant.

Case No. 17-CV-04946-LHK

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Re: Dkt. Nos. 39, 41

Plaintiff Carol Meyers ("Plaintiff") filed this ERISA lawsuit on behalf of her minor daughter A.M. against Kaiser Foundation Health Plan ("Kaiser"). Plaintiff is seeking reimbursement of amounts she paid for her daughter to receive out-of-network care for four months at a provider called Elevations RTC/Seven Stars.[1]

Pursuant to Federal Rule of Civil Procedure 52, each of the parties moves for judgment in its favor on Plaintiff's ERISA claim. Under Rule 52, the Court conducts what is essentially a bench trial on the record. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999).

---

[1] Throughout their briefing and the administrative record, the parties refer to the provider from which A.M. received care in various ways interchangeably, including "Elevations," "Elevations RTC," "Seven Stars," and Elevations RTC/Seven Stars." The Court refers to this treatment program as "Elevations RTC/Seven Stars" throughout this Order.

The parties' filings include Plaintiff's Opening Trial Brief ("Plt. Br.") (ECF No. 39); Kaiser's Opening Trial Brief ("Kaiser Br.") (ECF No. 41); Plaintiff's Responsive Trial Brief ("Plt. Resp.") (ECF No. 45); and Kaiser's Responsive Trial Brief ("Kaiser Resp.") (ECF No. 48), as well as the documents comprising the record.

Having considered the parties' briefs, the relevant law, and the record in this case, the Court finds that Kaiser did not abuse its discretion by denying reimbursement. The following constitutes the Court's Findings of Fact and Conclusions of Law. *See* Fed. R. Civ. P. 52.

## I.      SCOPE OF THE ADMINISTRATIVE RECORD

The Court first addresses the scope of the administrative record. The parties dispute whether certain documents should be included in the administrative record and considered by the Court. *See, e.g.*, ECF Nos. 50, 52, 55, 56. The documents in dispute concern (1) additional documents filed by the Plaintiff that she maintains constitute part of the administrative record and (2) additional documents filed by Kaiser that Kaiser inadvertently failed to produce with its initial disclosures. *See* ECF Nos. 50, 52, 56, 55. The Court considers these two groups of disputed documents below. As for the filed documents not contested by either party, the Court considers these documents as part of the administrative record because the Court finds that they comprise "the factual record presented to the plan administrator." *Dowdy v. Metro. Life Ins. Co.*, 890 F.3d 802, 807 (9th Cir. 2018); *see* ECF Nos. 40, 42, 44, 54.

Of the version of the administrative record filed by Plaintiff, Kaiser takes issue with the following additional documents filed by Plaintiff: K1–176;[2] K251–611; K1318–1433; and K2012–19 (referred to collectively as "Plaintiff's additional documents"). *See* ECF No. 50. Kaiser's primary issue with Plaintiff's additional documents is that the documents concern coverage for years or facilities not at issue in the instant suit, so Kaiser argues that Plaintiff's

---

[2] Disputes between the parties regarding the filing of the administrative record have resulted in the parties filing different versions of the same administrative record and having inconsistent citation methods in their briefs. To keep citations consistent, the Court cites to the Bates number provided at the bottom right hand corner of each document page. The full Bates number citation on the documents is labeled as "KFHP_#." However, for simplicity, the Court identifies the citations as "K#," and removes any extraneous zeros.

2

additional documents are outside of the scope of the record.

Plaintiff argues the documents are appropriate for the Court to consider because the documents comprise "the factual record presented to the plan administrator," *Dowdy*, 890 F.3d at 807, regardless of whether or not the administrator relied on the documents in making its benefits determination. *See* ECF No. 52. According to Plaintiff in her motion regarding the scope of the administrative record, K1–176 are part of the "plan document and thus are part of the record, *although Plaintiff's claim does not fall within this part of the plan*." *Id.* at 2 (emphasis added). Plaintiff asserts that K251–611 are "a critical part of the record," and even include one of Plaintiff's appeals (K580–591). *Id.* In particular, of K580–591, Plaintiff cites to K555, K556, and K580 in her trial brief, and asserts that these documents are part of Plaintiff's appeal to Kaiser for the instant claim related to treatment at Elevations RTC/Seven Stars. *See* Plt. Br. at 12–13. For instance, Plaintiff asserts that K555 shows that Kaiser acknowledged receiving Plaintiff's level two appeal, and that K566 is one of Kaiser's internal notes that states that Plaintiff's level two appeal was rejected, and that a rejection letter was sent. *Id.* As for the other additional documents, Plaintiff states in her motion regarding the scope of the administrative record that K1318–1433 also include medical records. ECF No. 52 at 2. Plaintiff does not specifically address K2012–19.

The Court's review of Plaintiff's additional documents reveals that the documents concern coverage plans for years not at issue, medical services at non-Kaiser facilities, or appeals related to facilities other than A.M.'s stay at Elevations RTC/Seven Stars from April 23, 2016 through August 12, 2016. *See, e.g.*, K1 (Kaiser Permanente's Evidence of Coverage for 2014); K83 (Kaiser Permanente's Evidence of Coverage for 2015); K254 (Out-of-Plan Benefits payment letter for Santa Clara Valley MED Phys Services); K335 (Out-of-Plan Benefits payment letter for Santa Clara Valley Medical CTR); K411 (Out-of-Plan Benefits payment letter for Santa Clara Valley MED Center Emergency Psych Services); K556 (Kaiser letter acknowledging dispute of decision filed by EMQ FamiliesFirst); K586 (Uplift Family Services (formerly EMQ FamiliesFirst) letter regarding second-level appeal process for services provided to minor with the initials A.A. on April 26, 2016); K594 (Kaiser letter denying claim for services provided by Tanner Memorial

United States District Court
Northern District of California

Clinic); K1320 (Kaiser letter denying claim for services provided by Brent W Smith, MD on November 15, 2016); and K2012 (Kaiser letter denying claim for services provided by Tanner Clinic). Most concerning, a close look at the three documents that Plaintiff cites in her trial brief (K555, K566, and K580) to support Plaintiff's interpretation of her appeal to Kaiser for treatment at Elevations RTC/Seven Stars from April 23, 2016 to August 12, 2016 reveals that these documents are not part of Plaintiff's Elevations RTC/Seven Stars appeal process at all. *See* K555 (Kaiser letter acknowledging dispute of decision filed by Catherine J Mason, MD for services rendered on April 14, 2016); K566 (Kaiser notes concerning dispute for treatment on April 14, 2016); and K580 (Uplift Family Services (formerly EMQ FamiliesFirst) letter regarding second-level appeal process for services provided to A.M. on April 14, 2016); *see also* Kaiser Resp. at 4–5 (discussing that Plaintiff mistakenly cites to three documents concerning claims submitted by a different facility in an attempt to assert that Kaiser committed procedural error). The Court further discusses Kaiser's appeals process for Plaintiff's Elevations RTC/Seven Stars below.

Therefore, having reviewed Plaintiff's additional documents, the Court agrees with Kaiser that the documents concern coverage for years or facilities not at issue. The Court, however, need not answer the question of whether Plaintiff's additional documents are part of the administrative record because even assuming that the documents constitute part of the record, their inclusion bears no weight on the Court's finding that the administrator's denial of benefits for A.M.'s treatment at Elevations RTC/Seven Stars was reasonable and not an abuse of discretion.

Turning next to the additional documents filed by Kaiser, Kaiser seeks to supplement the record with documents K4133–49, which are letters from Kaiser to A.M., dated March 1 and March 9, 2017, regarding Plaintiff's request to represent A.M. in connection with the Elevations RTC/Seven Stars claims and A.M.'s submission of a Statement of Authorized Representative to Kaiser, dated March 10, 2017. Plaintiff objects to including K4133–49 as part of the administrative record on the basis that Kaiser did not produce them with its initial disclosures.[3]

---

[3] Plaintiff also objects to K4125–32, and states that Kaiser failed to disclose these documents. However, these documents were already produced by Plaintiff as Meyers209–10 and Meyers276–

4

ECF No. 56 at 2. Kaiser responds only that it "inadvertently did not produce these records with its initial disclosures. [Kaiser] has updated its initial disclosures to include these records, which are part of the administrative record." ECF No. 50 at 3.

The Court agrees with Plaintiff that Kaiser should not now get the benefit of using K4133–49 after Kaiser failed to produce them earlier in the course of this litigation. On November 22, 2017, Kaiser agreed that "[a]s part of its initial disclosures in this ERISA action, [Kaiser] will provide Plaintiff with all of the records and communications it possessed at the time it made the benefit decision, which will comprise the administrative record." ECF No. 24. On November 29, 2017, the Court ordered the parties to exchange initial disclosures by December 13, 2017. ECF No. 26. Despite this, Kaiser did not disclose K4133–49 by December 13, 2017, and further, Kaiser did not file K4133–49 as part of the administrative record when it first lodged the record on August 17, 2018. *See* ECF No. 42. Instead, Kaiser filed K4133–49 for the first time on September 19, 2018, *see* ECF No. 54, *after* the Court asked for briefing to clarify the scope of the administrative record, ECF No. 49. In light of Kaiser's failure to timely file K4133–49, the Court does not consider them. *See* Fed. R. Civ. P. 37.

## II. FINDINGS OF FACT

Put briefly, this case concerns Plaintiff's daughter, a minor named A.M. who has a history of mental health issues starting around the time she was ███████████████████████████ ██████████████████████████ A.M. was hospitalized from the incidents and received treatment, such as psychotherapy, from Kaiser physicians. After several months of consulting with doctors who repeatedly recommended testing for ████████████████████████, A.M. was tested and diagnosed, and Kaiser physicians made a referral to therapy treatment at Easter Seals. Plaintiff declined this referral.

To get A.M. help after one of A.M.'s last outbreaks, A.M.'s mother sent A.M. to an

81 and were filed by Kaiser as Exhibits 7-C and 7-D when Kaiser initially filed the administrative record. *See* ECF No. 40. As such, the Court rejects Plaintiff's objections and considers K4125–32 as part of the administrative record.

involuntary residential psychiatric facility in Utah called Elevations RTC/Seven Stars for almost four months of treatment, including "experiential therapy" and "adventure activities." Elevations RTC/Seven Stars was out-of-network and outside of the service area of Plaintiff's Plan with Kaiser. After A.M.'s summer-long treatment, Plaintiff sought payment from Kaiser for the $68,825 that A.M.'s care at Elevations RTC/Seven Stars cost Plaintiff. Kaiser denied Plaintiff's claim for reimbursement, and Plaintiff filed an appeal with Kaiser. Plaintiff then filed the instant lawsuit seeking a determination that Plaintiff's claim is covered under the Plan and should have been paid by Kaiser. Kaiser maintains that it did not abuse its discretion by denying reimbursement. As this is a bench trial on the record, the Court makes the following factual findings. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006) (en banc) (directing district court's to make all required findings of fact).[4]

### A. The Plan

Plaintiff seeks coverage for A.M.'s residential mental health treatment at Elevations RTC/Seven Stars. A.M. was a covered dependent under Plaintiff's Kaiser Plan. The Evidence of Coverage ("EOC" or the "Plan") set forth the benefits under Plaintiff's Plan as well as the process for obtaining covered services. K249–50. The Plan provides coverage as follows.

### 1. Mental Health Services Coverage

The Plan specifically provides coverage for mental health services:

**Mental Health Services:**
We cover Services specified in this "Mental Health Services" section only when the Services are for the diagnosis or treatment of Mental Disorders. A "Mental Disorder" is a mental health condition identified as a "mental disorder" in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM) that results in clinically significant distress or impairment of mental, emotional, or behavioral functioning. We do not cover services for conditions that the DSM identifies as something other than a "mental disorder." For example, the DSM identifies relational problems as something other than a "mental disorder," so we do not cover services (such as couples counseling or family counseling) for relational problems.

---

[4] Many of the factual findings relate to Plaintiff's minor daughter's medical history, and for this reason, are sealed by the Court.

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

"Mental Disorders" include the following conditions:

• Severe Mental Illness of a person of any age. "Severe Mental Illness" means the following mental disorders: schizophrenia, schizoaffective disorder, bipolar disorder (manic-depressive illness), major depressive disorders, panic disorder, obsessive-compulsive disorder, pervasive developmental disorder or autism, anorexia nervosa, or bulimia nervosa[.]

• A Serious Emotional Disturbance of a child under age 18. A "Serious Emotional Disturbance" of a child under age 18 means a condition identified as a "mental disorder" in the DSM, other than a primary substance use disorder or developmental disorder, that results in behavior inappropriate to the child's age according to expected developmental norms, if the child also meets at least one of the following three criteria:

♦ as a result of the mental disorder, (1) the child has substantial impairment in at least two of the following areas: self-care, school functioning, family relationships, or ability to function in the community; and (2) either (a) the child is at risk of removal from the home or has already been removed from the home, or (b) the mental disorder and impairments have been present for more than six months or are likely to continue for more than one year without treatment[;]

♦ the child displays psychotic features, or risk of suicide or violence due to a mental disorder[;]

♦ the child meets special education eligibility requirements under Chapter 26.5 (commencing with Section 7570) of Division 7 of Title 1 of the California Government Code[.]

K214–15.

### 2. Service Area and Exceptions for "Emergency Services," "Post-Stabilization Care," and "Out-of-Area Urgent Care"

The Plan covers care from "Plan Providers located in [the Plan's] Service Area." K183. The Plan defines "Service Area" by listing specific zip codes for counties in Northern California. K186–87. The Plan explains that members "must receive all covered care from Plan Providers inside our Service Area," unless an exception applies. K183. Exceptions to the rule that members of the Plan must receive all covered care from Plan Providers inside the Service Area include: (1) "Emergency Services, Post-Stabilization Care, and Out-of-Area Urgent Care"; and (2) "Authorized referrals as described under 'Getting a Referral.'" *Id.*

7

With respect to the first exception, the Plan's "Definitions" section included definitions for "Emergency Medical Condition" and "Emergency Services":

**Emergency Medical Condition:** A medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that a reasonable person would have believed that the absence of immediate medical attention would result in any of the following:

> • ***Placing the person's health*** (or, with respect to a pregnant woman, the health of the woman or her unborn child) ***in serious jeopardy***[;]

> • Serious impairment to bodily functions[;]

> • Serious dysfunction of any bodily organ or part[.]

***A mental health condition is an Emergency Medical Condition when it meets the requirements of the paragraph above, or when the condition manifests itself by acute symptoms of sufficient severity such that either of the following is true:***

> • ***The person is an immediate danger to himself or herself or to others***[;]

> • The person is immediately unable to provide for, or use, food, shelter, or clothing, due to the mental disorder[.]

**Emergency Services:** All of the following with respect to an Emergency Medical Condition:

> • A medical screening exam that is within the capability of the emergency department of a hospital, including ancillary services (such as imaging and laboratory Services) routinely available to the emergency department to evaluate the Emergency Medical Condition[;]

> • Within the capabilities of the staff and facilities available at the hospital, Medically Necessary examination and treatment required to Stabilize the patient (once your condition is Stabilized, Services you receive are Post Stabilization Care and not Emergency Services)[.]

K184 (emphasis added). Under the Plan, the definitions for "Post-Stabilization" and "Out-of-Area Urgent Care" were as follows:

**Post-Stabilization Care:** Medically Necessary Services related to your Emergency Medical Condition that you receive in a hospital (including the Emergency Department) after your treating physician determines that this condition is Stabilized.

**Out-of-Area Urgent Care:** Medically Necessary Services to prevent serious deterioration of your (or your unborn child's) health resulting from an unforeseen illness, unforeseen injury, or unforeseen complication of an existing condition (including pregnancy) if all of the following are true:

• You are temporarily outside our Service Area[;]
• A reasonable person would have believed that your (or your unborn child's) health would seriously deteriorate if you delayed treatment until you returned to our Service Area[.]

K185–86. Further, the Plan defined "Medically Necessary" as:

**Medically Necessary:** A Service is Medically Necessary if it is medically appropriate and required to prevent, diagnose, or treat your condition or clinical symptoms in accord with generally accepted professional standards of practice that are consistent with a standard of care in the medical community.

K185.

With respect to the second exception, for "authorized referrals," the Plan provided that members must obtain a referral from an in-network physician for specialist treatment *before* obtaining the specialist treatment, or the specialist treatment would not be covered under the Plan. K194–95.

Finally, the Plan provided for out-of-network care if the covered Service is "not available at a particular Plan Facility." K198.

**B. A.M.'s Medical History**

A detailed description of A.M.'s medical and mental health history that led Plaintiff to send A.M. to Elevations RTC/Seven Stars follows.

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

14



Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

In a letter for Kaiser's "Level One Appeals," Plaintiff and her husband wrote that "[i]n March 2016, at the suggestion of the discharge staff at St. Mary's Hospital in San Francisco, we started to review programs that had a better chance of helping [A.M.]. With the help of an education consultant, we found programs that matched A.M.'s needs. Seven Stars (Elevations RTC) in Utah was the perfect match." K618. Kaiser says this fact was important because "by Plaintiff's own admission their decision to send [A.M.] to Seven Stars was made *before* [A.M.] was evaluated for or diagnosed with ███████." Kaiser Br. 14.

1 ███████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████

5 ███████████████████████████████████████████████

6 █████████████████████████████████████████████████

7 ████████████████████████████████████████

8      On April 7, 2016, A.M. finally underwent ████ testing at Kaiser's ████ Center.

9 K3964–69. A.M. was diagnosed with ██████████████████. K2758; K3965. On April 13,

10 2016, Kaiser's ████ Center issued a report by Dr. Crawford that detailed the assessment and

11 recommended treatment options. K4049–68. The report stated that "[A.M.] and her family were

12 referred to the Pediatric Development Disabilities Office (PDDO) for case management in regards

13 to services offered through Kaiser Permanente. A specific request for intensive behavioral

14 interventions was made. It is suggested that a behavioral specialist develop a behavior

15 management program for use at home to help her parents manage her behavior. The PDDO will

16 determine what services [A.M.] needs to best maximize her success." K4065.

17      **7.** ██████████████████ **April 15, 2016 Hospitalization**

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 █████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ██████████████████████████████████████████ on April 15, 2016, A.M.

23 was transferred and hospitalized at St. Helena Hospital Center for Behavioral Health until April

24 23, 2016, when, as discussed below, she was released and transported to Elevations RTC/Seven

25 Stars. K619; K917.

26

27

28

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

### 8. Plaintiff Declines Kaiser's Referral for Adaptive Behavior Assessment System/Behavioral Health Treatment Assessment and Services at Easter Seals

Near the same time as A.M.'s April 15, 2016 ███████ hospitalization, Kaiser proceeded to authorize the treatment for A.M. in connection with her ██████ evaluation and sent letters regarding available resources. K4075; K4103 (listing resources such as the "Regional Center of the East Bay," "San Jose Kaiser Permanente Child and Adolescent Psychiatry Services, and "Parents Helping Parents, Inc."). One of the specific treatment options was a request for four months of Adaptive Behavior Assessment System ("ABA")[7] (also referred to as a Behavioral Health Treatment assessment) and related ABA/Behavioral Health Treatment services at a place called Easter Seals. K4075; K4078–80. This request was approved on April 18, 2016. *Id.* Upon learning of A.M.'s April 15, 2016 hospitalization, Kaiser's psychiatry team (including Dr. Abrams) contacted Kaiser's ███████ Center to see if the ABA/Behavioral Health Treatment services could "be expedited given the severity of [A.M.'s] recent psychiatric admissions which have been due to ██████████████████████████." K4083. Kaiser also contacted Easter Seals: "The child psychiatry team was asking me if ABA[/Behavioral Health Treatment] services can be expedited due to ████████████████████. . . . Can someone please update me on timeline for a[n] assessment or if there are any ways we can help support the client and family within the assessment period." *Id.*

Easter Seals contacted Plaintiff to schedule the intake appointment, but it appeared to them that Plaintiff was not interested in Easter Seals treatment. K4086. On April 21, 2016, Easter Seals reported back to Kaiser: "I reached out to the above client[']s family to schedule an intake appointment. *Mom advised us that they want to hold off on services because they are working with a steps program.* I advised mom that once they are ready to start services that she will need to reach back out to you to send us a new referral." *Id.* (emphasis added).

---

[7] Kaiser documents define "ABA" as an assessment that "measures the functional skills of individuals from birth to adulthood necessary for daily living, focusing on what they do without help from others and whether they do them when it is needed. Adaptive behavior scores measure whether an individual performs the correct behavior or skill when it is needed, which is very different from just saying that someone knows how to perform a behavior." K4062.

19

On April 21, 2018, Kaiser contacted Plaintiff and left a voicemail requesting a call back to confirm whether she was declining the ABA/Behavioral Health Treatment services from Easter Seals. K4089. On April 22, 2016, Kaiser records indicated: "CM spoke with Theresa Abra[ms] from Child Psychiatry and she requested to gain comfirmation [sic] from mother declining ABA services. CM and Child psych will continue to reach out to mother to confirm if she is declining ABA or interested in ABA services. CM emailed [Easter Seals] requesting to keep referral open until further confirmation." K4092. On April 22, 2016, Kaiser learned from Plaintiff that she was declining the Easter Seals treatment: "received notification from Child Psych team stating the mother confirmed the client will be moving to Utah for out of state placement. CM emailed [Easter Seals] requesting referral closure." K4095.

### 9. Plaintiff Pursues Treatment at Elevation RTC/Seven Stars Program

The record reflects that Plaintiff declined ABA/Behavioral Health Treatment services treatment at Easter Seals to pursue treatment for her daughter at Elevations RTC/Seven Stars. On April 23, 2016, a private driver brought A.M. to the Elevations RTC/Seven Stars Program from the hospital at which A.M. had been held for over a week. K619; K648. Elevations RTC/Seven Stars is outside of Kaiser's network. Further, Elevations RTC/Seven Stars is located in Syracuse, Utah, which is outside of the Northern California service area of Plaintiff's Plan. *See* K186–87.

A.M. stayed at Elevations RTC/Seven Stars from April 23, 2016 through August 12, 2016. K612.

[Redacted]

During her time at Elevations RTC/Seven Stars, A.M. received therapy and participated in outdoor activities such as hiking, climbing, backpacking, and geocaching. K996–97. By August, A.M. was responding positively to the treatment. On August 8, 2016, Elevations RTC/Seven Stars staff wrote in an observational summary:

> This was a great week for [A.M.]. She did more climbs than she's ever done and was very excited about it. [A.M.] knew that it was her last week so she was trying to get as much done as possible before she left the program. She also wrote all the staff a personal letter to thank them for all their hard work.

K927. On August 12, 2016, A.M. was discharged:

> [A.M.] made a strong level of progress over her time at Seven Stars. Though her progress was slow, she was able to use her new found interest in experiential therapy and adventure activities to motivate herself in other aspects of programming including academics. [A.M.] slowly began to show the emotional regulation and internal motivation to be able to be successful in a longer term, next-step therapeutic environment. Her parents, with the help of their educational consultant, investigated programs that were designed for students requiring the level of support, both academically and behaviorally, for [A.M.].

K936.

### C. Plaintiff Seeks Reimbursement of Elevations RTC/Seven Stars Program Treatment

Plaintiff claims that the total bill for the Elevations RTC/Seven Stars care is $68,825. Plt. Br. at 19.

#### 1. Initial Reimbursement Requests

In August of 2016, Elevations RTC/Seven Stars began submitting claims to Kaiser for reimbursement. *See, e.g.*, K1202; K1226; K1260; K1271; K1317.

Kaiser denied the requests to pay for A.M.'s treatment at the Elevations RTC/Seven Stars program on the basis that "the medical service, supplies, and/or equipment you received were not prescribed/authorized by your Plan physician, Services, supplies, and/or equipment not authorized by a Plan physician are not payable by Kaiser Foundation Health Plan." K863; K1192–97; K1200–1201; K1229–34; K1250–54; K1274–79; K1282–83; K1286–91; K1307–12.

#### 2. Plaintiff Appeals

On February 6, 2017, Plaintiff filed an appeal of Kaiser's denial, which was received by Kaiser on February 8, 2017. K612–25. Plaintiff and her husband effectively made three arguments in the appeal for why they believed that A.M.'s stay at Elevations RTC/Seven Stars should be covered under the Plan. They argued that (1) Elevations RTC/Seven Stars was an "emergency service"; (2) Elevations RTC/Seven Stars was "out-of-area urgent care"; and (3) the treatment A.M. received at Elevations RTC/Seven Stars was not available in Kaiser's network and pursuant to Plaintiff's Plan, "[w]hen a service is covered but not available at a particular Plan Facility, Kaiser will make it available at another facility." *Id.*[8] On February 28, 2017, Kaiser noted in its own records that Plaintiff's appeal would be submitted "to DLH for processing." K1210.

On March 13, 2017, Plaintiff also filed a second appeal, which Kaiser acknowledged that it had received on March 17, 2017. K2029. However, Kaiser disputes whether Plaintiff's Plan even provided for two levels of appeals. *See* Kaiser Resp. at 4 ("But Plaintiff's health plan provided for

---

[8] Elevations RTC/Seven Stars also disputed Kaiser's benefit determinations, as Kaiser acknowledged in a letter dated February 14, 2017. K1261. In that same letter, Kaiser wrote to Elevations RTC/Seven Stars that "[i]f all necessary information has been included, your dispute will be promptly considered and you will be informed of our decision within forty-five (45) working days from the day we received it." *Id.*

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

one level of appeal, not two."). Under the section titled "Post-Service Claims and Appeals," the Plan states: "This [ ] section explains how to file a claim for payment or reimbursement for Services that you have already received." K232. The Plan sets out how to submit an "initial claim," and then how to appeal "a denial of an initial claim." K232–35. "If we did not decide fully in your favor and you want to appeal our decision, you may submit your appeal." K234. The Court agrees that nothing in the Plan specifically provides for a two-level appeal process. Additionally, in her trial brief, Plaintiff cites to several documents that she states are related to her second appeal of Kaiser's benefits determination with regards to Elevations RTC/Seven Stars. *See* Plt. Br. at 17–18 (citing K580; K555; K566). As discussed above, however, these documents are documents that Kaiser produced concerning claims submitted by a different facility, Uplift Family Services (formerly EMQ FamiliesFirst) for services at Uplift that occurred on April 14, 2016. *See* Kaiser Resp. at 4–5; *see also* K580; K555; K566. Therefore, these documents are not relevant to the benefits determination for A.M.'s stay at Elevations RTC/Seven Stars from April 23, 2016 to August 12, 2016.

On March 15, 2017, Kaiser noted in its records that it received via mail the "AOR," or "Statement of Authorized Representative." K2020. On March 15, 2017, Kaiser also noted in its records that the appeal would be submitted "to DLH for processing." K1210. On April 13, 2017, Kaiser wrote to Plaintiff requesting that she submit "[a]ll the medical records from the out of Plan facility for [A.M.]." K4125. "If I do not receive the information from you by April 19, 2017, a decision will be made based solely on the information available to us at the time of the review." *Id.* Kaiser states that the appeals were consolidated. *See* Kaiser Resp. at 5. However, it is not immediately clear from the document that Kaiser cites whether that occurred. *See* K2020–23.

Plaintiff claims that Kaiser did not respond to the level one appeal. Plt. Br. at 12. However, a review of the administrative record reveals that on April 20, 2017, Kaiser wrote in a letter to Plaintiff titled "Post-Service Claim Decision Notice":

> Thank you for contacting us on February 8, 2017 to request the following: For Kaiser Permanente to pay for [A.M.]'s out of Plan psychiatric treatment.

23

> We carefully reviewed your records and other relevant information to come to our decision and we are denying your request. We do want you to understand why we came to this decision and have explained it below.
>
> Your request for payment of expenses you incurred with out-of-Plan providers has been denied because self-referred, non-emergent, out-of-Plan care is not a covered Health Plan benefit.

M276; K4127. The letter then referred to the "Getting a Referral" section of Plaintiff's Plan, and explained that "[a]lthough members may choose to receive care from providers not associated with the Plan, they must do so at their own expense if we do not authorize it. Since the service your daughter received in Utah was not authorized by us, the cost of this service remains your financial responsibility." *Id.*

## III.    CONCLUSIONS OF LAW

The Court makes the following conclusions of law based on the preceding findings of fact.

### A.  Standard of Review

As an initial matter, the parties dispute what standard of review the Court should apply to reviewing the administrator's decision to deny reimbursement. For the reasons given below, the Court applies an abuse of discretion standard of review that takes in account Kaiser's conflict of interest and possible procedural error.

The default standard of review applicable to a plan administrator's decision to deny benefits is de novo. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Abatie*, 458 F.3d at 963. However, if the plan unambiguously gives the plan administrator discretion to determine a plan participant's eligibility for benefits, then the standard of review shifts to abuse of discretion. *Abatie*, 458 F.3d at 963. Here, there is no dispute between the parties that the Plan confers discretionary authority to Kaiser; therefore, the abuse of discretion review applies. *See* Plt. Br. at 24; Kaiser Br. at 5.

In reviewing for an abuse of discretion, an ERISA plan administrator's decision "will not be disturbed if reasonable." *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (internal quotation marks omitted). This reasonableness standard requires deference to the administrator's benefits decision unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be

24

drawn from the facts on the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir.2011) (internal quotation marks omitted); *see also Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs–Emp'rs Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir.2013) (The Ninth Circuit "equate[s] the abuse of discretion standard with arbitrary and capricious review"). Under this standard, the defendant's interpretation of the plan language "is entitled to a high level of deference and will not be disturbed unless it is not grounded on any reasonable basis." *Tapley*, 728 F.3d at 1139 (internal quotation marks omitted).

Although Plaintiff agrees that because the Plan conferred discretionary authority on Kaiser, and the abuse of discretion standard of review would normally apply, Plaintiff argues that the abuse of discretion review should be heightened or even switched entirely to de novo review because of (1) Kaiser's inherent conflict of interest and (2) Kaiser's failure to follow its procedural guidelines under the Plan. ECF No. 39 at 13-16. The Court addresses each argument in turn.

### 1. Effect of a Conflict of Interest

Plaintiff argues first that a structural conflict of interest exists because Kaiser is both the plan administrator and funding source. Plt. Br. at 14–13. When the "insurer acts as both funding source and administrator[,]" there is a structural conflict of interest that "must be weighed as a factor in determining whether there is an abuse of discretion." *Salomaa*, 642 F.3d at 1139 (internal quotations marks omitted); *see also Abatie*, 458 F.3d at 965. The Court agrees with Kaiser, however, that this conflict is merely a factor and does not transform the standard of review from abuse of discretion to de novo. Kaiser Br. at 2; *see Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (stating that a conflict does not imply "a change in the *standard* of review, say, from deferential to *de novo* review.").

Moreover, a court may view the decision of a conflicted administrator with a low level of skepticism "if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *See Abatie*, 458 F.3d at 968. Here, Plaintiff does not assert that the structural conflict of interest is accompanied by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. Further, the

Court's own review finds that the record is devoid of any evidence of malice, self-dealing or a

parsimonious claims-granting history, and of any evidence that Kaiser's inherent conflict played

any role in Kaiser's decision to deny the claim. Therefore, the Court reviews Kaiser's decision

with only a low level of skepticism.

### 2. Effect of a Procedural Irregularity

Plaintiff argues second that the Court should shift the standard of review to de novo

because Kaiser failed to follow its procedural guidelines. In the ordinary situation, procedural

errors are a matter to be weighed in deciding whether an administrator's decision was an abuse of

discretion. *Abatie*, 458 F.3d at 971; *see also Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d

978, 985 (9th Cir. 2005) (holding that an administrator who violates procedural requirements

under ERISA usually will not be subject to a different standard of judicial review). If, however,

"an administrator engages in wholesale and flagrant violations of the procedural requirements of

ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well," de novo

review applies. *Abatie*, 458 F.3d at 971–74.

Plaintiff argues that Kaiser failed to follow its own procedural guidelines under the Plan,

including that Kaiser "failed to timely respond to Plaintiff's appeals;" that "Kaiser construed the

Plan provisions in conflict with the plain language of the Plan that states that emergency care is

covered even when provided by an out-of-network provider;" and that Kaiser "failed to comply

with clear Plan provisions by disallowing coverage even though no in-network facility existed."

ECF No. 39 at 15.

However, except for failing to timely respond to Plaintiff's appeals, the Court finds no

evidence in the record of the failures of which Plaintiff complains. As is discussed further below

in Section III.B., the record demonstrates that the care A.M. received from Elevations RTC/Seven

Stars was not "emergency care." The record also reflects that A.M. was offered Adaptive Behavior

Assessment System /Behavioral Health Treatment services at Easter Seals, but Plaintiff rejected

that care and did not properly ascertain that no in-network facility existed or seek a referral from

Kaiser for treatment at Elevations RTC/Seven Stars before sending her daughter there.

The Court turns to Plaintiff's argument that Kaiser did not timely respond to Plaintiff's appeals. Plaintiff insists that Kaiser had to respond to any appeal within 30 days because, according to Plaintiff, the Plan allowed for two levels of appeals. *See* Plt. Br. at 19 (citing 29 CFR § 2560.503-1(i)(2)(iii)(A)). However, as the Court discussed above, the record reflects that the Plan set out a process for only one level of appeal. *See* K232–35. Therefore, according to 29 CFR § 2560.503-1(i)(2)(iii)(A), which governs the timeline for plans that provide for one level of appeal, Kaiser had 60 days to respond to the appeal. Pursuant to 29 CFR § 2560.503-1(i)(1)(i), Kaiser could obtain an extension of up to 60 additional days if it determined that an extension of time for processing was required due to special circumstances and gave written notice of the extension prior to the termination of the initial 60-day period. In light of this, Kaiser's response to Plaintiff's one level appeal would be timely as long as Kaiser responded within 60 days or provided written notice and requested an extension of no more than 60 additional days, and then responded within the time of that requested extension.

The record reflects that Plaintiff appealed the denial on February 6, 2017, and Kaiser received the appeal on February 8, 2017. K612–25.[9] On March 13, 2017, although not provided for by the Plan, Plaintiff also filed a second appeal, which Kaiser acknowledged it had received on March 17, 2017. K2029. On April 13, 2017, Kaiser wrote to Plaintiff requesting that she submit "[a]ll the medical records from the out of Plan facility for [A.M.]." K4125. "If I do not receive the information from you by April 19, 2017, a decision will be made based solely on the information available to us at the time of the review." *Id.* Kaiser denied Plaintiff's request for reimbursement on April 20, 2017. M276; K4127.

Based on the record available and the timeline described above, the time between February 6, 2017, when Plaintiff first appealed to Kaiser, and April 20, 2017, when Kaiser denied Plaintiff's request for reimbursement, constitutes two-and-a-half months—or 73 days. Pursuant to 29 CFR § 2560.503-1(i)(2)(iii)(A), Kaiser had 60 days to respond to Plaintiff's appeal. Therefore, Kaiser's

---

[9] Elevations RTC/Seven Stars also disputed Kaiser's benefit determinations, as Kaiser acknowledged in a letter dated February 14, 2017. K1261.

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

response was, at most, 13 days late.

The Court concludes that Kaiser's 13-day delay in responding does not constitute a wholesale and flagrant violation of the procedural requirements of ERISA requiring de novo review. *See Abatie*, 458 F.3d at 972. Instead, any such error looks more like a "procedural irregularity" that should only be "weighed in deciding whether an administrator's decision was an abuse of discretion." *Abatie*, 458 F.3d at 971–72.

The Court's determination is supported by the Ninth Circuit's decision in *Gatti*. In *Gatti*, the Ninth Circuit held "that violations of the time limits established in 29 C.F.R. § 2560.503–1(h) are insufficient to alter the standard of review" from abuse of discretion. 415 F.3d at 982. In *Gatti*, the Ninth Circuit reversed a district court's application of de novo review based on a defendant administrator's 279-day delay in processing a request for administrative review. *Id.* at 981, 985. In *Abatie*, the Ninth Circuit reiterated the holding from *Gatti* when it stated "[w]e have recently held that an administrator's failure to comply with such procedural requirements ordinarily does not alter the standard of review." 458 F.3d at 971 (citing *Gatti*, 415 F.3d at 985). Thus, if the Ninth Circuit found that a 279-day was a procedural violation that did not alter the abuse of discretion standard of review, certainly the 13-day delay in the instant case does not alter the standard of review.

Another court similarly found that a five-month delay did not constitute a wholesale and flagrant violation of the procedural requirements of ERISA requiring de novo review. *See Otto v. Emp. Ret. Income Plan – Hourly West*, No. LA CV14-05426 JAK (PLAx), 2015 WL 12516690, at *15–16 (C.D. Cal. Mar. 13, 2015) (citing *Gatti*, 415 F.3d at 981, 985). There, the district court specifically found that the defendant's "unexplained *five-month* delay in responding was a procedural violation, but it was not so egregious as to warrant the application of de novo review" *See id.* at *16 (emphasis added). As compared to the defendant's five-month delay in *Otto*, Kaiser's 13-day delay is more timely. Moreover, the record reflects that Kaiser's delay was not completely unexplained; Kaiser was in communication with Plaintiff throughout the appeals process, requested further documentation, and provided a determination within two-and-a-half-

28

months. Therefore, in light of the case law above, the Court concludes that Kaiser's 13-day late response does not constitute a wholesale and flagrant violation of the procedural requirements of ERISA, and thus does not require de novo review.

Thus, taking into account Kaiser's conflict of interest and procedural delay, the Court applies the abuse of discretion standard of review. However, the Court notes that it would come to the same conclusions below under a de novo standard of review.

**B. Kaiser Did Not Abuse Its Discretion**

The main question for the Court is whether Kaiser abused its discretion by denying reimbursement for the treatment A.M. received at Elevations RTC/Seven Stars.

In rejecting Plaintiff's request for payment of expenses at Elevations RTC/Seven Stars, Kaiser stated "Your request for payment of expenses you incurred with out-of-Plan providers has been denied because self-referred, non-emergent, out-of-Plan care is not a covered Health Plan benefit." M276; K4127. As in her appeal to Kaiser, Plaintiff argues in her opening brief to the Court that A.M.'s stay at Elevations RTC/Seven Stars is covered for three different reasons: (1) Elevations RTC/Seven Stars was an "emergency service" under the Plan; (2) Elevations RTC/Seven Stars was "out-of-area urgent care," and (3) the treatment A.M. received at Elevations RTC/Seven Stars was not available in Kaiser's network.[10] Plt. Br. at 16–17. However, Plaintiff concedes in her responsive brief that (2) the "out-of-area urgent care" coverage does not apply.

---

[10] Plaintiff also briefly argues that Kaiser's denial reveals that "Kaiser is discriminating against medically-necessary mental health care." Plt. Br. at 18 (citing *Danny P. v. Catholic Health Initiatives*, 891 F.3d 1155 (9th Cir. 2018)). However, Plaintiff raised this argument for the first time in her opening trial brief and did not assert discrimination in her Complaint. *See* ECF No. 1; *see also, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) ("Because [plaintiffs] raised the disparate impact theory of liability for the first time at summary judgment, the district court did not err when it did not allow them to proceed on it."); *Fairfax Portfolio, LLC v. Owen Corning Insulating Sys., LLC*, 2012 WL 124849, at *6 (D. Kan. Jan. 17, 2012) ("Having concluded that summary judgment must be denied, the court has concerns, however, with whether the parties can proceed to trial on this 'constructive holdover' theory. . . . [P]laintiff cannot assert a cause of action not raised in the complaint."); *Klein v. Boeing Co.*, 847 F. Supp. 838, 844 (W.D. Wash. 1994) ("[Plaintiff] never asserted this claim prior to his opposition to [defendant's] motion for summary judgment, nor has he moved to amend his complaint to add such a claim. Thus, this claim is not properly before the court" on plaintiff's motion for partial summary judgment). Moreover, Plaintiff points to no evidence in the record demonstrating discrimination. Therefore, the Court does not consider this argument further.

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

*See* Plt. Resp. at 7.

The Court considers each of these arguments in turn,[11] and concludes that Kaiser did not abuse its discretion. The Court also finds that it would reach the same conclusion if it reviewed the administrator's decision de novo.

### 1. A.M.'s Stay at Elevations RTC/Seven Stars Was Not an Emergency Service

Plaintiff argues first that A.M.'s stay at Elevations RTC/Seven Stars was an out-of-network "emergency service" that was covered by the Plan. Plt. Br. at 16. The Court disagrees with Plaintiff and finds that Kaiser was reasonable in determining that A.M.'s stay at Elevations RTC/Seven Stars was not an "emergency service" covered by the Plan. Therefore, Kaiser did not abuse its discretion.

Under the Plan, out-of-network care may be covered if it is for "Emergency Services." K183. The Plan defines "Emergency Services" as (1) medically necessary treatment required to (2) stabilize the patient. K184. "Medically necessary" is defined as "medically appropriate [service] . . . required to prevent, diagnose, or treat your condition or clinical symptoms in accord with generally accepted professional standards of practice that are consistent with a standard of care in the medical community." K185. "Stabilize" is defined as medical treatment of the "Emergency Medical Condition" "that is necessary to assure" that the patient will not suffer "material deterioration during the transfer of the person from the facility." K188. An "Emergency

---

[11] Kaiser responds to each of these arguments based on the Plan's language and the administrative record. *See* Kaiser Br. at 17–20. However, Kaiser also makes the additional argument that under California law, a minor patient cannot be involuntarily committed unless expressly authorized by statute that sets forth specific procedural requirements that must be met before a minor can be committed. *See id.* at 5–7; Kaiser Resp. at 7–8. For instance, Kaiser asserts that only a peace officer or professional designated by the county can make the required factual findings to support involuntary commitment. Kaiser Resp. at 7. Kaiser argues this determination was not made in A.M.'s case. *Id.* at 7–8. Kaiser also argues that under California law, a minor child can only be committed in a health facility designated by the county, but that Elevations RTC/Seven Stars is not approved by any county in California. *Id.* Therefore, according to Kaiser, under California law, A.M. could not have been involuntarily committed at Elevations RTC/Seven Stars. *Id.* at 8. The significance of this argument is not clear. Moreover, Plaintiff explains that this argument "is not relevant to the issues in this case, for Kaiser does not even attempt to argue that Elevations did not comply with all applicable regulatory and statutory law." Plt. Resp. at 4–5. Regardless, because the Court finds that Kaiser did not abuse its discretion in denying coverage based on the Plan's language and the administrative record, the Court need not address this argument.

Medical Condition" can include a "mental health condition" if, among other reasons, "[t]he person is an immediate danger to himself or herself or to others." K184.

Plaintiff argues that the care at Elevations RTC/Seven Stars "was clearly for an emergency. A.M. was transported by the police to a hospital *and then transferred to Elevations for further emergency care*. As soon as she was stabilized, she was released to out-patient care, which A.M. received from in-network providers." Plt. Br. at 17 (emphasis added). In her responsive brief, Plaintiff emphasizes that A.M. was found to be a danger to herself and others, and required emergency services, specifically residential mental health treatment. Plt. Resp. at 6.

Kaiser responds that A.M.'s treatment at Elevations RTC/Seven Stars was not an emergency service. In particular, Kaiser emphasizes that the treatment at Elevations RTC/Seven Stars was not medical treatment needed to "stabilize" A.M. to ensure that she would not suffer a "material deterioration during the transfer [ ] from the facility." *See* Kaiser Br. at 18; K188. Instead, Plaintiff "planned to have [A.M.] admitted to the program—completing lengthy paperwork for the program before her admission." Kaiser Br. at 18. On April 23, 2016, a private driver brought A.M. to the Elevations RTC/Seven Stars Program from the hospital. K648. Kaiser also argues that A.M.'s "treatment at Seven Stars—which involved therapy and wilderness activities—was not performed by emergency departments, was not the type of services performance by emergency departments, and was not intended to stabilize [A.M.] for release from an emergency department." Kaiser Br. at 18. Further, "as [A.M.]'s records from Seven Stars show, the program was not emergency treatment. [A.M.] was living in an unsupervised dormitory with other teenagers and engaged in wilderness and social activities." *Id.*; *see also* K742 (discussing hiking activities and dorm); K760 (discussing camping); K832 (discussing school and classroom); K845 (discussing hiking).

Based on the record, the Court agrees with Kaiser and finds that Kaiser did not abuse its discretion by interpreting the Plan language for "emergency services" to not cover A.M.'s treatment at Elevations RTC/Seven Stars. *See Harlick v. Blue Shield of California*, 686 F.3d 699, 708 (9th Cir. 2012) ("An ERISA plan is a contract that we interpret 'in an ordinary and popular

sense as would a [person] of average intelligence and experience.'" (citation omitted)). First, the

Court finds that Kaiser's determination that the treatment at Elevations RTC/Seven Stars was not

intended to stabilize A.M. for release from an emergency department as required under the Plan

language was reasonable. The Plan's definition of "stabilize" is limited to medical treatment of an

emergency medical condition "necessary to assure" that the patient will not suffer "material

deterioration during the transfer of the person from the facility." K188. Here, the record reflects

that A.M. was struggling with mental health issues for months. Plaintiff argues that A.M.'s stay at

Elevations RTC/Seven Stars was "emergency," but her trial brief relies on events that predate

A.M.'s April 23, 2016 travel to the program, including the events that led to A.M.'s

hospitalization on April 15, 2016, *over a week* before she was transported to Elevations

RTC/Seven Stars on April 23, 2016. *See* K619; K917; *see also, e.g.*, *Harp v. Kaiser Found.*

*Health Plan, Inc.*, 133 F. Supp. 3d 1248, 1262 (D. Or. 2015) (finding administrator's

determination reasonable where "nothing in the Administrative Record establishe[d] that

Plaintiff's condition needed urgent treatment to prevent 'serious deterioration' of her health").

Moreover, the fact that Plaintiff's decision to send A.M. to Elevations RTC/Seven Stars for

therapy was planned well in advance and during a time when A.M. was not hospitalized

undermines Plaintiff's assertion that A.M.'s stay at the program was an "emergency." Indeed, the

record reflects, and Plaintiff admits in her appeal to Kaiser, that A.M.'s parents decided to have

A.M. admitted to the Elevations RTC/Seven Stars program in March 2016, before A.M. was

hospitalized on April 15, 2016 and before A.M. began the Elevations RTC/Seven Stars program

on April 23, 2016. *See* K618; K648. Plaintiff also acknowledged in her appeal to Kaiser that

Plaintiff spent time reviewing and applying for the Elevations RTC/Seven Stars program in March

2016 after A.M. was discharged from the hospital in March 2016, and before A.M.'s April 15,

2016 hospitalization. Plaintiff stated: "[A]t the suggestion of the discharge staff at St. Mary's

Hospital in San Francisco, w*e started to review programs that had a better chance of helping*

*[A.M.]*. With the help of an education consultant, we found programs that matched [A.M.]'s

needs. Seven Stars (Elevations RTC) in Utah was the perfect match." K618 (emphasis added).

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW

This fact is important because it shows that Plaintiff made the decision to send A.M. to Elevations RTC/Seven Stars when A.M. was not hospitalized and not experiencing an immediate emergency. According to Plaintiff, the program reviewed A.M.'s application in advance and accepted A.M. into the program. Plaintiff wrote: Elevations RTC/Seven Stars "is specifically tailored to high functioning kids on ███████████. *[Elevations RTC/Seven Stars] reviewed [A.M.]'s profile and agreed to take her into their program." Id.* (emphasis added).

Additionally, the fact that Plaintiff enrolled A.M. at Elevations RTC/Seven Stars, and then paid a private driver to transport A.M. from the hospital where A.M. was held in California to the Utah program on April 23, 2016 also cuts against Plaintiff's argument that treatment at Elevations RTC/Seven Stars was for an "emergency." K648. As Kaiser aptly observes, if A.M. "required 'emergency' treatment, she would have obtained that treatment through continued stay at St. Helena's Hospital [(on April 23, 2016)]—not a wilderness program 800 miles away in Utah." Kaiser Resp. at 9; *see* K619; K917; *see also, e.g., Harp,* 133 F. Supp. 3d at 1262 (concluding that the administrator's interpretation in excluding plaintiff's claims was reasonable and stating that "the Court is sympathetic to Plaintiff's circumstances in[ ]attempting to care for a newborn while in severe pain and while simultaneously being dissatisfied with the health services she was receiving from her Health Plan. Nonetheless, that does not mean that the treatment she obtained in Idaho was for an 'unforeseen condition.' In fact, it is obvious she went to Idaho [(from Oregon)] at least in part to treat the condition, making it known, not unforeseen").

Next, the Court finds that Kaiser's determination that A.M.'s treatment at Elevations RTC/Seven Stars was not the type of services performed by emergency departments to be reasonable. *See Tapley,* 728 F.3d at 1139 (explaining that the administrator's "interpretation of Plan language is entitled to a high level of deference and will not be disturbed unless it is "not grounded on any reasonable basis'" (emphasis omitted)). A.M. spent four months receiving treatment at the Elevations RTC/Seven Stars program in Utah. The record reflects that the treatment at Elevations RTC/Seven Stars consisted of wilderness and social activities as well as therapy designed to help A.M. with her mental health issues. *See, e.g.,* K742; K765; K845. The

33

treatment included outdoor activities such as hiking, climbing, backpacking, and geocaching. K996–97. The Court finds it was reasonable for Kaiser to conclude that the four months of therapy provided by Elevations RTC/Seven Stars was not for an emergency service. *See Harlick*, 686 F.3d at 708 (stating that "we interpret" an ERISA plan "in an ordinary and popular sense as would a [person] of average intelligence and experience").

Therefore, having found reasonable Kaiser's determination that the treatment at Elevations RTC/Seven Stars was not intended to stabilize A.M. for release from an emergency department and that A.M.'s treatment at Elevations RTC/Seven Stars was not the type of services performed by emergency departments, the Court concludes that Kaiser did not abuse its discretion in denying Plaintiff's claim under the "emergency service" provision of the Plan. The Court notes that it would reach the same conclusion under a de novo standard of review.

### 2. Elevations RTC/Seven Stars Was Not "Out-of-Area Urgent Care"

Next, Plaintiff initially argued in her opening brief that A.M.'s stay at Elevations RTC/Seven Stars constituted out-of-area "urgent care" covered by the Plan. Plt. Br. at 16–17. Plaintiff stated in her opening trial brief: "the care also qualifies as urgent care because it was for medically necessary care that was needed on a 'prompt' basis. A.M. posed a clear, manifest danger to herself and others." *Id.* at 17. However, Plaintiff concedes in her responsive brief that "Plaintiff agrees that the 'out-of-area urgent care' coverage does not apply." *See* Plt. Resp. at 7 ("Since the medical condition did not begin while A.M. was outside of the service area of the Plan, the 'out-of-area urgent care' coverage, (K0185), does not apply."). Therefore, because Plaintiff concedes this issue, the Court need not consider it further.

### 3. A.M.'s Stay at Elevations RTC/Seven Stars Was Not Covered Under the Exception for Services that are Not Available In-Network

Finally, Plaintiff argues that even if A.M.'s stay at Elevations RTC/Seven Stars was not for "emergency services" or "urgent care," the treatment is covered by the Plan because the Plan also provides coverage for medically necessary care that is not available in-network. Plt. Br. at 17. Plaintiff maintains there was "no in-network facility that provided involuntary residential mental

34

health treatment." *Id.* Kaiser agrees that the Plan provides an exception for services that are not available in-network but argues that A.M.'s stay at Elevations RTC/Seven Stars was not covered by this exception. Kaiser Br. at 19. The Court finds that Kaiser's determination was reasonable.

First, the record is lacking in evidence that there was no provider in-network that could have treated A.M. Plaintiff cites only to two documents showing a search that Plaintiff conducted on Kaiser's website to argue that Plaintiff could not find a provider in-network that could have treated A.M. *See* Plt. Br. at 17 (citing K613, K888–89). The search documents show a screenshot of a search on Kaiser's website for "residential ███," with the results that state "0 results found for residential ███," and that "You can also: • Find our doctors. • Find medical facility locations. . . . • Learn how to get care away from home." K888. The search documents also show a screenshot of a search for "Residential Boarding School Treatment Centers in California," with results that state "[n]o matches for residential Boarding School Treatment Centers in California," but that you can "try other Treatment Centers below," including "TMS ███ Therapy," and "Lotus Place Recovery." K889.

The Court agrees with Kaiser that these search documents are irrelevant. *See* Kaiser Br. at 19. The search was conducted and screenshotted on January 8, 2017, almost one year after A.M.'s treatment at Elevations RTC/Seven Stars began. *See* K888–89. Moreover, the search was based on a limited word search, and Plaintiff focused only on the terms "residential ███," and "Residential Boarding School Treatment Centers in California." *Id.* There is no evidence in the record that Plaintiff consulted with Kaiser to determine if A.M. could receive this treatment in-network. Additionally, the record demonstrates that Kaiser physicians were in the process of referring A.M. to ABA/Behavioral Health Treatment services at Easter Seals. *See, e.g.*, K4075; K4078–80. Although this might not have been precisely the type of treatment Plaintiff wanted, it demonstrates that Kaiser was in the process of helping Plaintiff obtain longer term care for her daughter. *See, e.g.*, *Harp*, 133 F. Supp. 3d at 1262 (finding no abuse of discretion and stating that "[w]hile other options which may have allowed [plaintiff] to receive care at Kaiser in Oregon were presumably less practical or palatable or more expensive, they likely existed. The Administrative

35

Record discloses that [p]laintiff went to Idaho because she needed help caring for[ ]her baby and she was unhappy with the care she received at Kaiser.").

Second, the Court also agrees with Kaiser that even if there were no in-network facilities that could have treated A.M., the Plan language required Plaintiff to confirm with Kaiser before A.M. began the treatment out-of-network and out-of-state; otherwise, the treatment would not be covered by Plaintiff's Plan. *See* Kaiser Br. at 19; Kaiser Resp. at 10. In particular, the Plan provided an exception for care out of the service area when the member obtains an authorized referral from an in-network provider and approval from the Medical Group *before* the services are rendered. K183; K194–95. The record is devoid of any evidence that Plaintiff did either. Instead, the administrative record shows that Plaintiff elected in March 2016 to send A.M. to the out of state program on her own and made that decision before A.M. was hospitalized again in April 2016 and ultimately sent to the program. *See* K618; *see also, e.g.*, *Harp*, 133 F. Supp. 3d at 1262 ("There is no evidence in the Administrative Record suggesting that Plaintiff consulted with her Kaiser pediatrician to make a determination that these visits were urgent in any way and could not wait until Plaintiff returned to Oregon.").

Plaintiff argues that she submitted a claim for the transfer to Elevations RTC/Seven Stars to Kaiser. Plt. Br. at 18 (citing K4095); Plt. Resp. at 6 (citing K1242). However, the Court finds that this argument by Plaintiff misstates the record. Document K4095 is an encounter record detailing a phone call between Plaintiff and Kaiser therapist Tawnee Russell. In the record, Tawnee Russell summarizes her interaction with Plaintiff: "CM received notification from Child Psych team stating that the mother confirmed the client will be moving to Utah for out of state placement. CM emailed [Easter Seals] requesting referral closure." K4095. The Court agrees with Kaiser that this note simply memorializes the fact that Plaintiff declined the Easter Seals referral for therapy. It does not reflect that Plaintiff submitted a claim to get approval of Elevations RTC/Seven Stars treatment.

Additionally, document K1242–43, is a computer screen print-out with multiple columns that reflects the cost for A.M.'s treatment from April 23, 2016 to April 30, 2016. *See* K1242–43.

36

However, the print-out does not indicate that Plaintiff sought pre-approval from Kaiser for Elevations RTC/Seven Stars treatment, nor does it reflect that Kaiser paid for the Elevations RTC/Seven Stars bill. Instead, the print-out states the "Rcpt date" was August 8, 2016, and only shows that the treatment charge was $4,480 and that Kaiser paid $0.00 for treatment at Elevations RTC/Seven Stars. *See id.* Therefore, the Court concludes that Plaintiff did not seek approval with Kaiser before A.M. began her treatment at Elevations RTC/Seven Stars. *See, e.g.*, *Harp*, 133 F. Supp. 3d at 1264 ("Defendant reasonably interpreted the plan language in concluding that the claims for which Plaintiff sought payment were not reimbursable because they occurred out of the service area, were not pre-authorized, and were for treatment by non-participating providers at non-participating facilities for non-urgent conditions.").

In sum, the Court finds it was reasonable for Kaiser to conclude that A.M.'s stay at Elevations RTC/Seven Stars was not covered under the exception for services that are not available in-network. Therefore, Kaiser did not abuse its discretion. The Court also finds that it would reach the same conclusion under the de novo standard of review.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Kaiser did not abuse its discretion by denying reimbursement for A.M.'s treatment at Elevations RTC/Seven Stars.

**IT IS SO ORDERED.**

Dated: December 11, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 17-CV-04946-LHK
FINDINGS OF FACT AND CONCLUSIONS OF LAW